**NORTHWESTERN NATIONAL INSURANCE COMPANY,**
Plaintiff,

v.

**James G. OSBORNE, Defendant.**

**Civ. A. No. 83–151.**

United States District Court,
E.D. Kentucky,
Covington Division.

May 23, 1985.

Ron Parry, Robinson, Arnzen, Parry & Wentz, Covington, Ky., for plaintiff.

Robert G. Breetz, Stites & Harbison, Louisville, Ky., for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

Once again the continuing drama of the controversy between the plaintiff, Northwestern National Insurance Company, and its former attorney, James G. Osborne, has come before this court. The reader is referred to the previous Opinion of this court, which appears at 573 F.Supp. 1045 (E.D. Ky.1983), for a complete statement of the facts and background of this legal malpractice action. For ease of reference, the statement of facts in that case is set forth in the Appendix attached hereto.

This court held on the basis of the facts of record at the time the original Opinion was rendered that the Statute of Limitations had not run. The essence of this court's rationale in so holding was stated as follows at 573 F.Supp. at 1048:

> "... the present law of Kentucky requires the following three elements for the accrual of a cause of action for legal malpractice: (1) a negligent act or omission on the part of the attorney; (2) the occurrence of damage that is not merely speculative as a proximate result of such act or omission; (3) discovery of the negligence and damage by the client. The addition of the prerequisite of the discovery factor by the statute did not negate the *sine qua non* of damage."

This court observed in the original Opinion that the approach indicated was in accord with previous Kentucky cases and that this solution provides the best public policy resolution of the difficult problem of when a cause of action for legal malpractice should be deemed to accrue. By requiring that there be some non-speculative damage before the statute begins to run, unnecessary malpractice actions are avoided where the client is content to let the attorney continue to handle the case in an effort to straighten it out.

As the original Opinion observed, sometimes efforts to correct an inadvertent act may take longer than the statutory period. Such rule assures that the client need not sue until such time as the situation has so deteriorated that he feels it necessary to retain another attorney, a judgment has been entered against him, or some other non-speculative item of damage has been incurred.

The court was careful to observe at the conclusion of the previous Opinion that it was expressing no view as to what the situation would be had the client incurred expenses for new counsel at some point in the course of events.

Following the rendition of the original Opinion, the defendant Osborne moved the court for leave to proceed with discovery to determine if any non-speculative damage had occurred earlier than the record indicated at the time of the Opinion. The defendant proceeded with appropriate discovery and that discovery demonstrated that more than one year prior to the commencement of the action, the plaintiff insurance company had retained independent counsel to follow the underlying arson litigation in the state court. The discovery made clear, and it is not now denied, that billable services were rendered by independent counsel on June 7, 1982, when he had a conversation with a representative of Northwestern. Although a statement was not rendered until later, it is now undisputed that a billable telephone conversation was held on June 7, 1982, as the first item of independent counsel's activities. Subsequently, on November 9, 1982, a bill was rendered in the total amount of $4,209.55, which included this item.

Following these revelations, Osborne, with leave of court, renewed his motion to dismiss on the basis of the statute of limitations. The court granted this motion on January 2, 1985, and by a concurrent judgment dismissed the complaint. The matter is now before the court again on a motion for reconsideration, supported by zealous briefs on behalf of the plaintiff.

Plaintiff's main contentions on this motion are that this court should reconsider its evaluation of Kentucky law and conclude that the Kentucky state courts would follow the rule that the statute of limitations for legal malpractice does not begin to run until the attorney-client relationship has been terminated or at least until the underlying litigation has been concluded. In the alternative, plaintiff asserts that damage should not have been deemed to have been incurred until the first bill by independent counsel was rendered. Plaintiff also argues that the one telephone conversation was an insubstantial item and that substantial damage did not occur until a later time when more services had been rendered by independent counsel. Of course, the time selected by plaintiff as to when such services should be deemed substantial would render timely the filing of this litigation.

■ The court has carefully re-evaluated all these arguments and once again reviewed the entire record and the authorities. The court remains of the opinion, however, that substantial in the sense of non-speculative damage occurred when independent counsel first rendered billable services and that the Statute of Limitations began to run at that point. Therefore, the motion for reconsideration must be denied.

In the original Opinion, this court addressed and rejected the contention that the view to be favored was that the statute did not begin to run until the attorney-client relationship was ended. It is frequently difficult to tell when this occurs, and in some circumstances it never occurs. This court is strongly of the belief that the best policy will provide some definitive and readily ascertainable date as to when the statute begins to run, and as discussed more fully below such a result is required by the statutory language.

■ Plaintiff's second contention that rendition of services by independent counsel should be considered incidental and separable from the greater claim that results from the underlying negligence is also without merit, although there is some authority to support it.[1] First of all, there are situations where the bill for independent or substitute counsel may be greater than damages incurred from the underlying negligence. Second, such a rule would be contrary to the Kentucky precedents cited in the original Opinion that a cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred, subject in certain kinds of actions to the additional requirement of discovery of the claim by the plaintiff. The Kentucky case of *Caudill v. Arnett*, 481 S.W.2d 668 (Ky.1972), specifically holds that failure to appreciate the extent of one's eventual damages, because the injury initially appears to be slight, is not an excuse for failure to comply with the statute of limitations. *See also*, 51 Am.Jur.2d, *Limitation of Actions* §§ 107, 109.

Further, this court believes that the use of the word "occurrence" in KRS 413.245[2] indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.

1. R. Mallen & V. Levit, *Legal Malpractice* § 201 (1977).

2. This is the critical statute in this case. It reads:
"Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability."

There is no doubt that plaintiff could have sued as soon as it had irrevocable non-speculative injury. When it retained independent counsel that it knew was going to render billable services, this event occurred. It could have sued for the expenses of retaining independent counsel even had the underlying litigation been resolved in its favor. The retention of independent counsel was an event solely within the control of the plaintiff, and it certainly cannot deny knowledge of it.

Able counsel for plaintiff argues that to hold that the Statute of Limitations began running upon the retention of independent counsel would mean that every time a client sought an independent opinion from an attorney concerning the handling of a matter by another attorney a suit must be filed. This may sometimes be the case. However, this situation is easily avoided by the client's going to the allegedly negligent attorney and obtaining a waiver or extension of the statute of limitations until such time as it may be seen if the underlying litigation can be favorably concluded.

Plaintiff's other contentions may also be seen to be totally unworkable. Suppose independent counsel had rendered an entire day's worth of services upon being retained, rather than one phone call, and billed $1,000.00 therefor. Would this be substantial? Requiring such an analysis in each case would defeat the salutary and, in the view of this court, overriding policy of the statute that a definitive, readily ascertainable event triggering the statute be discernible. Under plaintiff's theory, each case would require poring over independent or substitute counsel's bill to determine when it became substantial.

We must remember that we are dealing with a statute, and that statute has a plain meaning, at least with regard to the issue with which the court is here presented. That meaning is that the statute of limitations should begin to run upon the accrual of and discovery of a "cause of action."[3] The Kentucky courts had previously defined that term in the cases cited in the original Opinion. Services rendered by independent counsel would without doubt be recoverable damages pursuant to the cause of action for malpractice. No authority has been cited or discovered by this court for the approach of the text previously cited for deeming payment for independent counsel as being separate from the damages for the underlying action. This may be a worthy approach but it is not the approach adopted in KRS 413.245, by which this court is bound. This court is bound by the plain meaning of the statute unless it would lead to absurd results. *See Carlotta v. Warner*, 601 F.Supp. 749 (E.D.Ky. 1985), and cases therein cited.

When independent counsel was retained a running account was opened. It is venerable lore that a suit may be filed upon a running account at any time without violating the ancient prohibition against splitting a cause of action.[4] Thus, independent counsel could have billed and sued for payment as soon as the first item of billable service had been rendered, whatever its amount. Therefore, Northwestern sustained irremediable, nonspeculative damage at that time.

There was no doubt that independent counsel was being retained to delve into the matter and probably eventually take over the litigation. Osborne was so informed prior to the conclusion of the underlying litigation.

Further, no injustice follows from the approach adopted herein because, as has been said, the retention of independent counsel is a matter solely within the discretion and control of the aggrieved client. If he does not desire to sue within the statutory period, he could seek a waiver of the statute from the allegedly negligent attorney, who if he declines to grant it, has only

---

**3.** A "cause of action" is traditionally defined as "an aggregate of operative facts giving rise to a right or rights ... which will be enforced by the courts." C. Clark, *Code Pleading*, § 19 (1947).

**4.** C. Clark, *Code Pleading* § 74 (1947).

himself to blame for an unnecessary suit against him.

Hopefully, this matter may now be laid to rest, at least as far as this court is concerned. For the reasons above stated, the motion for reconsideration of the Order dismissing this action must be, and is, DENIED.

## APPENDIX

[573 F.Supp. 1045, 1046–1047]

This legal malpractice action was brought by the plaintiff, Northwestern National Insurance Company, against the defendant, James G. Osborne, Attorney at Law, of Covington, Kentucky.

In March 1979, one Mary L. Deitsch brought an action in the Kenton County, Kentucky, Circuit Court against her insurer, Northwestern National Insurance Company, to recover damages for a loss of her home by fire and for wrongful denial of coverage. Northwestern retained Osborne to defend it against Deitsch's claim.

The litigation did not proceed smoothly. In the course of defending Northwestern, Osborne, at least in the opinion of the state trial court where the *Deitsch* action was pending, behaved in such a manner as to unreasonably impede the discovery process. The state trial judge felt that extreme sanctions were warranted under Kentucky Civil Rule 37, which is substantially the same as the corresponding Federal Rule.

Accordingly, on March 5, 1981, the state trial court granted Deitsch's motion to strike Northwestern's answer and hold Northwestern in default for its alleged failure to produce witnesses for deposition and for other alleged violations of the Kentucky Civil Rules governing the discovery process. In the order of March 5, 1981, the court assigned the matter for a damages trial on March 10th of that same year, and ordered trial briefs filed on the damages issues. The March 5th order specifically recited that it was not an appealable order.

Osborne continued to represent Northwestern, promptly notified it of the unfortunate events recited above, and undertook to try to get the matter straightened out.

Apparently feeling that he would be better off in the Kentucky appellate court rather than remaining before the same trial judge, Osborne moved that in lieu of holding the damages hearing the trial court certify the March 5 order as appealable. The state trial court granted this motion and on March 10, 1981, an order was entered purporting to certify the order as appealable. As discussed, *infra*, this court concludes that this certification did not in fact render the Order of March 5, 1981, a final appealable order. Nevertheless, an appeal was taken and heard by the Kentucky Court of Appeals. Discretionary review was denied by the Supreme Court of Kentucky. Later, having retained new counsel, Northwestern settled with Deitsch and filed this action against Osborne. A recapitulation of the specific dates and events follows:

*March 5, 1981,* Order of default entered.

*March 9, 1981,* Osborne filed a Motion to Set Aside the Order of Default on behalf of Northwestern and moved the state trial court to strike the portion of its Default Order which provided that it was not an appealable order.

*March 10, 1981,* the state trial court sustained this motion, struck the language, "THIS IS NOT AN APPEALABLE ORDER," and stated that the Default Order was "further amended to read that This is a Final and Appealable Order and there is no just cause for delay."

*April 1, 1981,* Osborne on behalf of Northwestern filed a Notice of Appeal to the Kentucky Court of Appeals from the Order of March 5, 1981.

*February 19, 1982,* the Kentucky Court of Appeals (Kentucky's intermediate appellate court) affirmed, stating that the trial court had acted within its discretion.

*June 8, 1982,* Northwestern wrote Osborne a letter stating that new counsel would take over the *Deitsch* litigation

APPENDIX—Continued

"just as soon as the Supreme Court of Kentucky rules on our pending motion for discretionary review regardless of the outcome." No contention is made that Northwestern incurred any expense with the new firm until after the Supreme Court acted, however.

*June 29, 1982,* the Supreme Court of Kentucky denied discretionary review.

*December 17, 1982, and June 2, 1983,* Northwestern settled with Deitsch for $250,000, plus an assignment of part of Northwestern's claim, if any, against Osborne. (For reasons not clear to this court, there were two settlement agreements).

*June 28, 1983,* this action was filed by Northwestern against Osborne in United States District Court for the Eastern District of Kentucky.

Osborne moved to dismiss this action on the ground that it was barred by Kentucky's one-year statute of limitations for malpractice.